UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

-vs-

D-1 JAMES R. ROSENDALL, JR.

Defendant.
_____/

Case: 2:09-cr-20025
Judge: Cohn, Avern
MJ: Pepe, Steven D
Filed: 01-22-2009 At 01:24 PM
INFO USA V SEALED MATTER (EB)

OFFENSE: 18 U.S.C. §§ 371 and 666(a)(2)
(Bribery Conspiracy)

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### General Allegations

At all times relevant to this Information:

1. The City of Detroit (hereinafter, the "City") was a municipal corporation and local government within the Eastern District of Michigan. The Detroit Water and Sewerage Department ("DWSD") was an agency of the City responsible for the treatment of wastewater in the City and the transmission of water to customers in Detroit and Southeast Michigan. Both the City and DWSD received federal assistance in excess of $10,000 during both calendar years 2006 and 2007.

2. "*City Official A*" and "*City Official B*" were agents within the executive branch of the City, whose duties included the administration of the laws, policies, finances and contracts of the City. "*Aide to City Official A*" was at times an agent within the executive branch of the City and at other times a campaign aide.

-1-

3. *"City Council Member A"* was an agent within the legislative branch of the City, whose duties included consideration of administration proposals regarding policies, finances and contracts of the City.

4. Defendant JAMES R. ROSENDALL, JR. held various positions with Synagro Technologies, Inc., including President of Synagro of Michigan, Inc. In these roles, defendant assisted Synagro in acquiring a company called Minergy Detroit, LLC, which had contracted with the City in 1999 to privatize the disposal of sludge generated during the treatment of wastewater at facilities operated by DWSD. Defendant also assisted Synagro in convincing the City Administration and Council to agree to amend and restate the Minergy contract in November 2007, so Synagro could perform the contract using its own treatment processes (hereafter, "Synagro contract").

## Count One

5. The general allegations set forth in Paragraphs 1-4 are realleged and incorporated herein.

6. Between about 2001 and 2008, in the Eastern District of Michigan and elsewhere, defendant JAMES R. ROSENDALL, JR., together with others, did knowingly and intentionally conspire, combine, confederate and agree, to commit an offense against the United States – that is to corruptly give, offer, and agree to give things of value to persons intending to influence and reward agents of the City in connection with a transaction and series of transactions of the City involving $5,000 or more.

7. In furtherance of the conspiracy and to effect its objects, defendant and others committed a number of overt acts in the Eastern District of Michigan and elsewhere, including the following:

a.   In about 2001, in Lansing, Michigan, defendant gave *City Official A* and an aide several bundled campaign checks, telling them that defendant worked for Synagro, which was interested in taking over a wastewater contract with the City.

b.   In about early 2004, at the instruction of *City Official A*, defendant worked with *"Relative A of City Official A"* (hereinafter, *"Relative A"*) in obtaining the Synagro contract with the City.

c.   *Relative A* introduced defendant to *"Intermediary A,"* telling him that *Intermediary A* would be defendant's point-of-contact in obtaining the Synagro contract.

d.   Between early 2004 and 2008, defendant made periodic payments to *Relative A* at *Relative A's* request, totaling at least $25,000, despite the fact that *Relative A* spent little time helping to obtain City Council approval of the Synagro contract.

e.   Defendant attended fund raisers for *City Official A* and donated about $200,000 to non-profits, political action committees and campaign entities associated with *City Official A*, as directed by *City Official B, Aide to City Official A* and others.

f.   On about September 12, 2003, defendant chartered a private jet, costing about $18,000 to $20,000, to take *City Official A*, *City Official B*, and others from the Eastern District of Michigan to Las Vegas, Nevada, returning on about September 14, 2003, in part, for a boxing title fight.

g. On about April 1, 2004, defendant chartered a private jet, costing about $15,000 to $18,000 to take *City Official B, Aide to City Official A,* and others from the Eastern District of Michigan to Las Vegas, returning about April 4, 2004, for an ultimate fighting championship.

h. In about June 2004, defendant chartered a private plane to fly *Aide to City Official A* to and from Mackinac Island for a conference.

i. In about June 2007, defendant chartered another private plane to return *City Official A, Relative A* and another family member of *City Official A* to Detroit from a conference on Mackinac Island.

j. In about June 2007, DWSD approved the Synagro contract.

k. In about 2007, the City Administration presented the Synagro contract to the City Council for its review and approval.

l. In about the fall of 2007, *Intermediary A* made and caused payments to be made to *City Council Member A* in exchange for *City Council Member A's* vote in favor of the Synagro contract.

m. In about the fall of 2007, *Intermediary A* made and caused additional payments to be made to *City Council Member A* in exchange for *City Council Member A's* vote in favor of the Synagro contract.

n. On about November 20, 2007, *City Council Member A* voted in favor of the Synagro contract.

o. On about November 27, 2007, the *City Official A* authorized a resolution approving the Synagro contract.

p.  In about the fall and winter of 2007, following the approval of the Synagro contract, *Relative A* made repeated demands of defendant for payments to *Relative A* in connection with the contract.

q.  On about December 20, 2007, defendant met with *Relative A* in a parking lot in Detroit and gave *Relative A* several hundred dollars in cash. At that same time, defendant gave *Relative A* a case of Cristal champagne for *City Official A*.

r.  Defendant provided the items of value described above with the intent to influence and reward agents of the City in connection with their support and approval of the Synagro contract.

All in violation of Title 18, United States Code, Sections 371 and 666(a)(2).

Respectfully submitted,

TERRENCE BERG
Acting United States Attorney

MARK CHUTKOW
Assistant United States Attorney

R. MICHAEL BULLOTTA
Assistant United States Attorney

Dated: January 22, 2009

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cov** | Case: 2:09-cr-20025<br>Judge: Cohn, Avern<br>MJ: Pepe, Steven D<br>Filed: 01-22-2009 At 01:24 PM<br>INFO USA V SEALED MATTER (EB) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to com

| **Companion Case Information** | **Companion Case Numbers:** Karl Kado, 08-20418, Glenn Blanton, 08-20478, E.L. Pavledes, 08-20415<br>*** (see addendum, attached) *** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** Marianne O. Battani (all 3 cases) |
| ■ Yes    ☐ No | **AUSA's Initials:** |

**Case Title:** USA v. James R. Rosendall, Jr.

**County where offense occurred:** Wayne

**Check One:**    ■ Felony    ☐ Misdemeanor    ☐ Petty

____ Indictment/ ✓ Information --- **no** prior complaint.
____ Indictment/____ Information --- based upon prior complaint [Case number: ]
____ Indictment/____ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below].*

**Superseding Case Information**

**Superseding to Case No:** n/a          **Judge:** n/a

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| n/a | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

January 22, 2009
Date

*/s/ Mark Chutkow*
MARK CHUTKOW
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9168
Fax: (313) 226-3413
E-Mail address: mark.chutkow@usdoj.gov
Attorney Bar #: n/a

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/20/04

## *** Addendum to Companion Case Information ***

The facts and circumstances forming the basis of the charges against the instant defendant, James R. Rosendall, Jr., are related to three criminal cases in the Eastern District of Michigan before U.S. District Judge Marianne O. Battanni:

(1) *United States v. Karl Kado,*
No. CR-08-20418;

(2) *United States v. Glenn Blanton,*
No. CR-08-20478; and

(3) *United States v. Efstathios Louis Pavledes,*
No. CR-08-20415.

Defendants Rosendall, Kado and Pavledes had separate corrupt interactions with some of the same former officials of the City of Detroit and relatives of those officials, some of whom have been identified in court documents by pseudonyms, including the following: *City Official A; Relative A of City Official A;* and *City Official B.* In addition, defendants Rosendall and Blanton had separate corrupt interactions with *City Official B.*