UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            No. 2:09-cr-20025

vs.                                        Hon. Avern Cohn

D-1  JAMES R. ROSENDALL, JR.,

        Defendant.

## DEFENDANT ROSENDALL'S
## SENTENCING MEMORANDUM

I.    <u>Introduction</u>

On January 22, 2009, the government filed a one-count Information charging the defendant, James R. Rosendall, Jr., with conspiracy to commit bribery, punishable by five years' imprisonment, a $250,000 fine, a $100 special assessment and a supervised release term of not more than three years. *See* 18 U.S.C. §§ 371, 666(a)(2), 3571(b)(3), 3013(a)(2)(A), 3583(b)(2). On January 26, 2009, the parties filed a plea agreement, and on the same day Mr. Rosendall waived his right to indictment and pled guilty to the Information.

Sentencing is scheduled for Monday, November 30, 2009, and the defense submits this memorandum in support of its position.

II.    <u>Presentence Investigation Report</u>

The defense agrees with the determination in the Presentence Investigation Report (PSR),

that is consistent with the plea agreement,[1] that the guidelines are calculated as follows:

*** Guideline ***

| | |
|---|---:|
| Base offense level, § 2C1.1(a)(2) | 12 |
| Specific Offense Characteristics | |
| • More than one bribe, § 2C1.1(b)(1) | 2 |
| • Value of the benefit, § 2B1.1(b)(1)(L) | 22 |
| • Offense involved elected official, § 2C1.1(b)(3) | 4 |
| Adjusted Offense Level | 40 |
| Acceptance of Responsibility, § 3E1.1(a)&(b) | -3 |
| **Total Offense Level** | **37** |

PSR ¶¶ 28-39. The defendant has no prior convictions of any kind, so he is properly scored with no points, placing him in Criminal History Category I. PSR ¶ 41. The defense concurs that total offense level 37, in Criminal History Category I, yields a guideline range of 210 to 262 months. PSR ¶ 70. The statutory maximum penalty for the charged violation of 18 U.S.C. § 371 is five years; therefore, the guideline range becomes 60 months. U.S.S.G. § 5G1.1(a); PSR ¶ 70.

As discussed below, the defense further requests that the court grant a defense request for a departure or variance pursuant to 18 U.S.C. § 3553(e), together with the government's contemplated motion for downward departure for substantial assistance under U.S.S.G. § 5K1.1 to reduce the offense level down to Zone B. *See* PSR ¶¶ 6, 82; PLEA AGREEMENT ¶ 4(A)(2)(b), at 13.

III.  Discussion

   A.  Introduction

The defense respectfully submits that Mr. Rosendall is worthy of being sentenced well below

---

[1] The Plea Agreement reflects that there are no sentencing guideline disputes. PLEA AGREEMENT ¶ 2(B).

the prescribed guidelines for three reasons: (1) a departure or variance is applicable based on the fact that the amount of "loss" (or value of the benefit) overstates the seriousness of the offense conduct, (2) a departure is warranted for substantial assistance, U.S.S.G. § 5K1.1, and (3) the circumstances of the offense and the offender, 18 U.S.C. § 3553(a). In particular, the defense requests that the court depart down to Zone B of the sentencing guideline table.

As the court well knows, although it is required to consider the guidelines, it has the authority to tailor a sentence in light of the other statutory requirements of the Sentencing Reform Act of 1984, 18 U.S.C. § 3553, *et seq. United States v. Booker*, 543 U.S. 220, 245 (2005) (Breyer, J.). The court is to "impose a sentence sufficient, but not greater than necessary," to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)&(a)(2). The Supreme Court has made it clear that the sentencing guidelines "are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 129 U.S. 890, 892 (2009) (per curiam) (emphasis in original).[2] Moreover, there is no rule that requires "extraordinary" circumstances to justify sentence outside guidelines range, because appellate courts are to review under an abuse-of-discretion standard, regardless of whether sentence is inside or outside guidelines range. *United States v. Gall*, 552 U.S. 38 (2007). There also is no requirement that, after concluding

---

[2]Although the district court is required to calculate the guidelines range properly, that is only a "starting point and initial benchmark" of the sentencing analysis. *Gall*, 552 U.S. at 49. "In so doing, [the court] may not presume that the Guidelines range is reasonable," and it "must make an individualized assessment based on the facts presented." *Id.* at 50. If the court concludes that sentence outside the guidelines is warranted, it must consider "the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id. See also Rita v. United States*, 551 U.S. 338, 351 (2007) (appellate presumption of reasonableness does not apply to district court's analysis of sentencing factors).

that a departure is warranted, the court must specify a new, adjusted sentencing range, and there is no requirement that the court distinguish adjustments on the basis of whether they are departures or variances. *United States v. Herrera-Zuniga*, 571 F.3d 568, 587 (6th Cir. 2009).

The courts of appeal have regularly upheld significant variances. In *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009), the Sixth Circuit upheld a variance down to one day in a child pornography case. *See also United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008) (reduction of almost 50% upheld); *United States v. Kathman*, 490 F.3d 520, 526 (6th Cir. 2007) (downward variance of more than 50% upheld); *United States v. Carter*, 538 F.3d 784 (7th Cir. 2008) (reduction from 87 to 108 months down to 24 months sustained); *United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007) (relying alone on defendants' good character, genuine remorse, susceptibility to treatment and low risk of recidivism, court reduced sentence by over 40%).

B.   Value of the Benefit

As stated above, under the guidelines computation 22 levels are added for the specific offense characteristic involving the value of the benefit to be received in return for the bribery, calculated to be between $20 million and $50 million. U.S.S.G. §§ 2C1.1(b)(2); 2B1.1.(b)(1)(L); PSR ¶¶ 22, 30.[3] The guideline bases the amount on the "value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, *whichever is greatest*." U.S.S.G. § 2C1.1(b)(2) (emphasis supplied). Rote application of this analysis can yield anomalous results, which overstate the seriousness of the offense behavior for

---

[3] The loss figure is based on the estimated net profit to Synagro as a result of the 25-year contract. The government, on reflection, has acknowledged that the figure may well be too high. It posits that a more realistic valuation is $6.1 million. This adjustment would result in a four level decrease. U.S.S.G. § 2B1.1(b)(1)(J).

several reasons.

First, from the payment side the guideline does not take into account whether the payments themselves were legal or illegal. Payment is broadly defined to include "anything of value" and it "need not be monetary." U.S.S.G. § 2C1.1, Application Note 1. With such a broad definition it does not distinguish between the offender who uses legal means to achieve an illegal result and the offender who uses illegal means to achieve the illegal result.

Second, from the benefit side the guideline simply does not take into account whether the subject of the bribe, whether a product or service, was reasonable and fairly priced. In other words, it does not distinguish between the offender who bribes to get something to which he is not entitled and the offender who bribes simply to secure a contract.

Third, the guideline does not take into account whether the benefit was obtained to the exclusion of better, more inexpensive alternatives. In other words, it does not take into account the situation where bribery was unnecessary because the subject of the bribe was a superior product or service.

Fourth, in a corporate context, the guideline does not identify whether the benefit is to be measured by what the corporation expected to receive or what the individual paying the bribe is expected to receive. Case law appears to suggest that the measure is based on the benefit to the corporation. *See, e.g., United States v. Kinter*, 235 F.3d 192, 197 (4th Cir. 2000) (defendant who acted as middleman in kickback scheme was properly enhanced based on benefit contractor received rather than the lesser amount of benefit that defendant personally received), *cert. denied*, 532 U.S. 937 (2001), *United States v. Bankston*, 182 F.3d 296, 317-18 (5th Cir. 1999). Therefore, the guideline as interpreted does not take into account situations in which the person involved in the

bribe personally benefits significantly less than the corporation on whose behalf the bribe is paid.

Finally, the specific offense characteristic of the guideline regarding the value of the benefit also does not take into account whether payments made were all willingly made or made, in part, due to duress or some form of extortion. In other words, some of the valuation reflects more on the behavior of the person demanding payment, not the one making the payment. While such circumstances do not change the offender's overall intent, they should alter the importance that the monetary valuation plays in calculating the guideline.

In the case at bar, all of these factors are relevant on the issue of the value of the benefit, and they illustrate why rote application of the "value of the benefit" computation is justified. Many of the payments made were, in and of themselves, legal. Many of the entertainment expenses were legal, many of the political and charitable contributions were not illegal and much of the lobbying services were not illegal. It is also undisputed that the Synagro contract was a bona fide contract which was reasonably priced. In fact, it stood to save the municipality a lot of money,[4] and it was a long-term material benefit to the community. Moreover, there never has been an indication that the contract was approved to the exclusion of a better or more worthy arrangement. Also, to not differentiate between the benefit to Synagro as opposed to the benefit to Mr. Rosendall contributes to distortion. Finally, the figures are in part inflated because they include amounts that Mr. Rosendall or Synagro paid primarily at the insistence of those who received payment.

For all these reasons, therefore, the defense respectfully submits that the benefit figure of $20 million to $50 million to Synagro grossly overstates the seriousness of the offense conduct. A figure

---

[4] For example, through the utilization of land application alone the city could have saved about $6 million annually, and implementation of new incinerator technology long term could have reduced emissions by about 70%.

6

substantially less should be utilized for purposes of calculating the specific offense characteristic regarding the value of the benefit under U.S.S.G. § 2C1.1(b)(2).

The mechanism to adjust the guidelines calculation can be either a departure of a variance. The application notes to U.S.S.G. § 2B1.1, expressly recognize this situation as being a proper basis for a departure: "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted. U.S.S.G. § 2B1.1, *Application Note 19(C); see also United States v. Krilich*, 159 F.3d 1020, 1031 (7th Cir. 1998), *cert. denied*, 528 U.S. 810 (1999). Moreover, this analysis is always a proper basis for a variance, taking into account the nature and circumstances of the offense. 18 U.S.C. § 3553.

    C.    <u>Substantial Assistance</u>

The plea agreement provides that the government will move for a downward departure based on substantial assistance under U.S.S.G. § 5K1.1. *See* PLEA AGREEMENT ¶ 4(A)(2), at 13; PSR ¶¶ 6, 82 at 5-6, 17. As the court well knows, it may depart from the guidelines based on the defendant having "provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1. The factors to consider in evaluating the degree of departure include:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;

    (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

    (5) the timeliness of the defendant's assistance.

Mr. Rosendall, when confronted with certain allegations, promptly chose to cooperate, and he worked diligently providing accurate and truthful information, which led to the prosecution of others. For these reasons alone, the defense respectfully submits that Mr. Rosendall is entitled to a substantial reduction for his cooperation.

  D. <u>Statutory Factors</u>

Section 3553 of title 18 of the United States Code provides, as the court well knows, that it is to consider in imposing a sentence various factors, including the:

- nature and circumstances of the offense,
- history and characteristics of the defendant,
- need for the sentence to
  - reflect the seriousness of the offense, promote respect for the law and provide just punishment,
  - afford adequate deterrence,
  - protect the public, and
  - provide the defendant with educational and other training
- kinds of sentences available,
- kinds of sentence prescribed by the sentencing guidelines,
- need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and
- need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). These and other relevant factors clearly support imposing a sentence well below the prescribed guidelines range.

Although the offense is serious, it was nonviolent. In fact, given its nature the reality is that the simple fact of conviction has had, and will have, a tremendous impact on Mr. Rosendall. There are many collateral consequences, not the least of which is the impairment of business relationships

and severe limitations on business opportunities in the future.

Mr. Rosendall has no criminal history and has otherwise led an exemplary life, working hard all his life to carry on the family business tradition. His strength of character is best demonstrated by the manner in which he has handled this case. He cooperated fully without any assurances at first. He recognized that he had betrayed people who had been good to him, and he explained everything he had done. He was instrumental in outlining the nature and extent of his conduct and the conduct of the others who were involved. He provided detailed information about various transactions, which was never seriously disputed. Moreover, it was not likely that many offenses would ever have been discovered without him coming forward at considerable risk to himself and his family.

Given what he has gone through, there is little likelihood of recidivism. He must, and will, turn the page, find a way to use his talents wisely and move in a completely different direction. Fortunately, as the letters of support amply demonstrate, he enjoys significant family support and he has been unwavering in his commitment to his family despite this tumultuous period.

Contemplated in the plea agreement is a sentence of no more than 11 months in Zone B of the sentencing table. In that zone, the court has three options: (1) imprisonment according to the applicable guidelines level; (2) imprisonment that includes a term of supervised released with a condition that substitutes community confinement or home detention according to a schedule, provided at least one month is satisfied by imprisonment; and (3) probation that may include conditions that substitute intermittent confinement, community confinement or home detention according to a schedule. U.S.S.G. § 5C1.1(c)(3). Therefore, the court could order a term of probation on condition that he serve a term of home detention. This would provide some chance for him to retain employment that he has worked hard to secure with minimal disruptions to the family.

V.	Conclusion

For the above reasons, the defense respectfully requests that the court impose a term of probation under conditions it deems appropriate.

Dated: November 23, 2009

Respectfully Submitted,

WILLEY & CHAMBERLAIN LLP
Attorneys for Defendant

s/ Charles E. Chamberlain, Jr.
_____
Charles E. Chamberlain, Jr. (P33536)

40 Pearl Street, N.W., Suite 940
Grand Rapids, Michigan  49503-3032
(616) 458-2212
cec@willeychamberlain.com